UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE, | ) | |
|  Plaintiff | ) | CIVIL ACTION NO. 12-19-KKC |
| | ) | |
| v. | ) | |
| | ) | |
| MARVIN WATSON, | ) | |
|  Defendant | ) | |
| | ) | |
| | ) | |
| MARVIN WATSON, | ) | |
|  Plaintiff | ) | CIVIL ACTION NO. 12-151-KKC |
| | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS MUTUAL LIFE | ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY and | ) | **AND ORDER** |
| RONNIE JAMES BAXTER, | ) | |
|  Defendants | ) | |

\*\*\*\*\*\*

This matter is before the Court on the motion to bifurcate and stay discovery filed by Massachusetts Mutual Life Insurance Company ("Mass Mutual"). (DE 13.) For the reasons below, the Court will grant Mass Mutual's Motion.

**I.  Background**

This action arises from an insurance policy dispute between Marvin Watson and Mass Mutual. Mass Mutual issued to Watson a policy of disability income insurance on August 25, 2010. Ronnie James Baxter, an insurance agent, had provided Watson with the application for this policy. Following a work-related injury, Watson submitted a claim for benefits under the policy in April 2011. After reviewing Watson's medical records, Mass Mutual discovered what it considered to be material misrepresentations in Watson's application, namely Watson's failure

1

to disclose treatment for migraine and back issues in the past, and rescinded his policy. On January 11, 2012, Mass Mutual informed Watson of this decision and tendered to him a check representing a refund of premiums paid, including interest. Watson has not submitted the check for payment.

Mass Mutual then filed an action in federal court asking the Court to declare the parties' rights in relation to the insurance policy in light of the misstatements. (DE 1.) After Mass Mutual filed its federal declaratory action, Watson filed an action in Fayette Circuit Court, which has been removed to this Court. (*See Watson v. Massachusetts Mut. Life Ins. Co.*, No. 12-151-KKC, DE 1.) These two actions have since been consolidated. (DE 10.) Watson asserts both contractual and extra-contractual claims. (*See Watson v. Massachusetts Mut. Life Ins. Co.*, No. 12-151-KKC, DE 1-1, Complaint.) Mass Mutual moves now to bifurcate Watson's bad faith claims (Counts Five and Six) and Consumer Protection Act claim (Count Seven) from the underlying contract dispute.

## II. Analysis

Bifurcation is proper here because separating the claims of insurance coverage from bad faith and consumer protection serves to promote convenience, avoid prejudice, and prevent juror confusion. *See* Fed. R. Civ. P. 42(b); *see also Wilson v. Morgan,* 477 F.3d 326, 339 (6th Cir. 2007); *see also Martin v. Heideman,* 106 F.3d 1308, 1311 (6th Cir. 1997). The decision to try issues or claims separately is discretionary. *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.,* 76 F.3d 743, 747 (6th Cir. 1996). Federal courts in Kentucky have consistently employed bifurcation to separate insurance coverage disputes from bad faith claims. *See, e.g. Hardy Oil Co., Inc. v. Nationwide Agribusiness Ins. Co.,* No. 11-75-JBC, 2011 WL 6056599, *1 (E.D. Ky. Dec. 6, 2011)("Bifurcation serves to avoid prejudice to the parties by eliminating

potentially unnecessary and cumbersome discovery," by narrowing "other claims, thus reducing the time and money parties will need to expend to litigate them," and by "prevent[ing] confusion to the jury by simplifying the issues."); *Bruckner v. Sentinel Ins. Co., LTD*, No. 09-195-JBC, 2011 WL 589911, *2 (E.D. Ky. Feb. 10, 2011)("Given that Bruckner's bad faith claim depends on her ability to succeed on her breach of contract claim, bifurcation would best serve the interests of judicial economy.").

Watson instead argues that bifurcation is the exception rather than the rule and points to *Tharpe v. Illinois National Insurance Co.*, 199 F.R.D. 213 (W.D. Ky. 2001), for support. In *Tharpe*, the court decided against bifurcation because the matter was a first-party insurance action. *Id.* at 214-15. The court reasoned that because it was a first-party claim, the issues of coverage and those for bad faith were "inextricably linked" and the "usual considerations which militate in favor of bifurcation [were] absent." *Id.* at 215. In *Tharpe*, the coverage and bad faith claims both concerned the reasonableness of a chiropractor's bill, and therefore, the court concluded that proof overlapped to an extent that made bifurcation practically unrealistic. *Id.*

Mass Mutual argues that *Tharpe* can be distinguished, and the Court agrees. Discussing *Tharpe*, Judge Russell of the Western District of Kentucky explained that first-party bad faith claims are routinely separated from coverage issues. *Brantley v. Safeco Ins. Co. of Am.*, No. 1:11-CV-00054-R, 2011 WL 6012554, *2 (W.D. Ky. Dec. 1, 2011) (citations omitted). "These cases lend themselves to bifurcation under Rule 42(b) because if the plaintiff cannot prevail on the coverage issue, the claim for bad faith necessarily fails." *Id.* Judge Russell noted that while these decisions are made on a case-by-case basis, a review of precedent shows that "the question of bifurcation centers on whether resolution of a single claim would be dispositive for the entire case." *Id.* (citing *Smith v. Allstate,* 403 F.3d 401, 407 (6th Cir. 2005); *In re Beverly Hills Fire*

*Litig.*, 695 F.2d 207, 216 (6th Cir. 192); *Bruckner*, 2011 WL 589911, at *2). Mass Mutual also cites *Gatewood v. Universal Underwriters Life Ins. Co*. in support, and the Court finds it persuasive. No. 5:06-CV-125-R, 2007 WL 496375 (W.D. Ky. Feb. 7, 2007). In *Gatewood*, the court faced similar issues to those presented here: an insurer claimed a disability policy was void based on misrepresentations of past medical treatment in the application, and the insured filed suit asserting claims for breach of contract and bad faith. *Id.* at *1. The court concluded bifurcation was proper, because the bad faith claims depended on resolution of the contract claim. *Id.* at *2. Furthermore, the court found that "discovery on the bad faith claims should be stayed pending the resolution of the underlying contract claim in order to avoid the product of privileged documents irrelevant to the contract action and prejudicial to the insurer in the contract action." *Id.*

Likewise, this Court concludes bifurcation here would serve all the goals outlined in Federal Rule of Civil Procedure 42(b). Bifurcation serves the interests of judicial economy and convenience because Watson's bad faith and consumer protection claims require his breach-of-contract claim to succeed first. Under Kentucky law, a bad faith claim requires showing that "the insurer is obligated to pay the claim under the terms of the policy...." *Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky. 1993); *see also Davidson v. Am. Freightways, Inc.,* 25 S.W.3d 94, 100 (Ky. 2000) ("Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute."). As a result, Watson's bad faith and consumer protection claims rest on his ability to demonstrate insurance coverage; therefore, bifurcation best serves the interests of judicial economy and convenience by proceeding with the breach-of-contract claims separately. *See Smith v. Allstate,* 403 F.3d 401, 407 (6th Cir. 2005) (affirming bifurcation where the merits of the bad faith claim depended on resolution of the underlying contract claim).

Additionally, bifurcation would avoid prejudice.  Trying all of Watson's claims together would interject the issue of bad faith into the possibly dispositive dispute of insurance coverage, thus complicating discovery and the trial.  *See Pollard v. Wood*, No. 5:05-444-JMH, 2006 WL 782739, at *2 (E.D. Ky. Mar. 27, 2006)(noting that trying liability and bad faith claims together "unnecessarily interjects the issue of insurance coverage into the primary dispute of liability").  Bifurcation would not prejudice Watson; he will have the opportunity to litigate his bad faith and consumer protection claims if he succeeds on his breach-of-contract claim.  By simplifying the issues, bifurcation also helps to prevent juror confusion.  *Sanders v. Motorists Mut. Ins. Co.,* No. 08–37–DCR, 2008 WL 4534089, at *3 (E.D. Ky. Oct. 7, 2008) (explaining that presenting a contract issue and bad faith issue to the jury "may unfairly bleed the evidence for one into the evidence for the other").  Given that all factors weigh in favor of bifurcation, the Court, in its discretion, concludes that bifurcation of the contract claim from the bad faith and consumer protection claims is appropriate.

Like bifurcation, the decision whether to stay discovery until preliminary issues are decided is discretionary.  *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003)(citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)).  In the context of an insurance dispute with contractual and bad faith claims, the Sixth Circuit concluded that it was reasonable for the district court to stay discovery on the bad faith claim "[b]ecause the merits of the bad faith claim depended on whether the limitations provision was valid." *Smith*, 403 F.3d at 407.

Watson contends there is an overlap of evidence between the contractual and extra-contractual claims.  Watson argues that both the contractual and extra-contractual claims require disclosure of privileged materials to examine the motive and intent behind Mass Mutual's

5

actions. Mass Mutual, in turn, argues the issues are distinct, and that such broad-based discovery would risk potential prejudice and threaten judicial economy with potentially unnecessary delay. Specifically, Mass Mutual raises concerns about the revelation of attorney-client or work-product information.

The contract claim will focus on Watson's application and whether any statements or omissions on it will void the policy. Under Kentucky law, a misrepresentation, omission, or incorrect statement on an application for an insurance policy will prevent recovery under the policy in three circumstances: (1) if the representation were fraudulent, (2) if the representation was material to insurer's acceptance of risk or hazard assumed, or (3) if the insurer "in good faith" would not have issued the policy or would not have issued the policy at the same premium if the true facts were known. KRS § 304.14-110. In Kentucky, " 'a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of ... insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated therein.'" *Cook v. Life Investors Ins. Co. of Am.,* 126 F. App'x 722, 724 (6th Cir. 2005) (quoting *Mills v. Reserve Life Ins. Co.,* 335 S.W.2d 955, 958 (Ky. 1960)). The parties agree that discovery on the contractual claims would include Watson's actions during the application process, his completed application, and his pre-application medical records. Watson further argues that that the contractual claim also requires inquiry into Mass Mutual's reasons for denying and rescinding coverage and so the evidence will be the same for both the contractual and extra-contractual claim. Watson suggests that Mass Mutual would use the same witnesses for both issues and would use the same expert to testify about claims handling for both contractual and extra-contractual claims. Mass Mutual disagrees and contends that unlike the contractual claims, the extra-contractual claims will focus upon Mass Mutual's

"motive, conduct, and knowledge when it denied coverage." *Forcht Bank, NA v. Bancinsure, Inc.*, No. 10-259-JBC, 2010 WL 5673870, at *1 (E.D. Ky. Dec. 10, 2010)(bifurcating bad faith and contractual claims and staying discovery on the bad faith claims).

Similarly, the Court finds that a stay of discovery regarding Watson's bad faith and consumer protection claims is also appropriate. Like in *Gatewood*, these contractual and extra-contractual claims arise from a dispute over representations in a disability insurance policy application and are not so intertwined as to require such broad-based discovery. Furthermore, the "inquiry into the basis for the bad faith claims should be abated until the necessity for such discovery is certain." *Hoskins v. Allstate Prop. & Cas. Ins. Co.*, No. 6:06-389-DCR, 2006 WL 3193435, at *3 (E.D. Ky. Nov. 2, 2006)(bifurcating contract claims from tort claims and staying discovery on the tort claims). A stay of discovery on Watson's extra-contractual claims will avoid the prejudice of forcing Mass Mutual to broadly disclose privileged information until that disclosure may be necessary. A stay also will promote judicial economy by avoiding discovery that may prove unnecessary depending on the resolution of the underlying contractual claims.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Massachusetts Mutual Life Insurance Company's motion to bifurcate and stay discovery (DE 13) is GRANTED.

Dated this 11th day of January, 2013.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge